**Marcia C. BUNNELL,**
**Plaintiff–Appellee,**

**v.**

**Louis W. SULLIVAN,\* Secretary of Health and Human Services, Defendant–Appellant.**

**No. 88–4179.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1989.

Decided Aug. 30, 1990.

\* Louis W. Sullivan is substituted for his predecessor, Otis R. Bowen, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

Kathryn A. Warma, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellant.

Elie Halpern, Halpern, Smith & Bailey, Rochester, Wash., for plaintiff-appellee.

Before WALLACE and NELSON, Circuit Judges, and WILSON,** District Judge.

WALLACE, Circuit Judge:

Bunnell's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act) was denied by the Secretary of Health and Human Services (Secretary). On appeal, the district court remanded the case to the Secretary, concluding that the administrative law judge (ALJ) had failed to make findings sufficient to reject Bunnell's claims of disabling pain. The Secretary now appeals the district court's remand order. The district court exercised jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. *See Stone v. Heckler*, 722 F.2d 464, 467–68 (9th Cir. 1983). We reverse.

I

Bunnell is a 45 year old divorced woman with a high school education. She has a history of multiple hereditary exostoses. Exostoses are bony growths projecting outward from the surface of a bone, characteristically capped by cartilage. Bunnell's condition resulted in the development of valgus, i.e., bent outward, ankles, which in turn resulted in leg pain. In order to re-

** Honorable Stephen V. Wilson, United States District Judge, Central District of California, sitting by designation.

lieve her symptoms, Bunnell underwent surgery on her left ankle in 1977. Although, initially, Bunnell had some problems with pain control, she progressed well, and was discharged.

In addition to her ankle problem, Bunnell has a three-centimeter discrepancy in leg length, which causes a slight positional scoliosis, and which apparently causes her some back pain. Bunnell was advised several times to obtain shoes with a lift that would alleviate the pain caused by this discrepancy, but she delayed doing so, and when she finally had the shoes made, she refused to wear them and tore them up.

Bunnell filed her application for SSI benefits on August 27, 1984. She alleged that she has not been able to work since the operation due to her ankle problems, differing leg lengths and arthritis. Bunnell's application was denied both initially and upon reconsideration. Having timely requested a hearing, Bunnell then appeared and testified before an ALJ on January 22, 1986. At the hearing, Dr. Linder, a medical advisor, also testified. Following the hearing, Bunnell submitted additional medical records. The ALJ in turn issued interrogatories to Dr. Linder with respect to these additional records. After considering all of the evidence, the ALJ found that Bunnell was not disabled within the meaning of the Act and thus was not entitled to SSI benefits.

Bunnell thereafter sought review of this decision by the Appeals Council, and also requested that she be allowed time to submit additional evidence and to obtain counsel. Bunnell then retained counsel who, during the following months, submitted additional evidence for consideration of the Appeals Council. On September 28, 1987, after considering the entire record, including the additional evidence submitted by Bunnell, the Appeals Council refused to review the decision of the ALJ.

Bunnell then filed a complaint for benefits in federal district court. Adopting the report and recommendation of the magistrate, the court held that the ALJ had failed to explain with sufficient specificity the basis of his rejection of Bunnell's claims of disabling pain. The case was accordingly remanded to the Secretary for further proceedings. The Secretary appeals from that order.

We review the judgment of the district court de novo. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989). The Secretary's denial of benefits will "be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.1988), *quoting Green v. Heckler*, 803 F.2d 528, 529 (9th Cir.1986) (*Green*); 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*Richardson*), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) (*Consolidated Edison*), but "less than a preponderance." *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988), *quoting Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427, *quoting Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. at 216.

Our duty is to review the record as a whole and consider adverse as well as supporting evidence. *Green*, 803 F.2d at 529–30. We are required to uphold the decision of the Secretary where evidence is susceptible of more than one rational interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir.1984).

## II

Bunnell makes three arguments against the Secretary's conclusion that she is not disabled. We address each in turn.

### A.

Bunnell first contends that the ALJ improperly disregarded the testimony of her most recent treating physicians, Dr. Orchard and Dr. Van Hemert. Several different times during 1985 and 1986, Dr. Or-

chard, a family practitioner, opined that Bunnell was "unemployable" since "she cannot stand for long, or sit for long, and because of limited training." Dr. Van Hemert, a chiropractor, examined Bunnell in July of 1985 and also concluded that Bunnell "will be unable to seek gainful employment for a period of six months due to the instability of her cervical and lumbar spine."

■ The ALJ did not err in discounting Dr. Van Hemert's reports. Since he is a chiropractor, Dr. Van Hemert is not considered an acceptable medical source. 20 C.F.R. § 404.1513 (1989). Although a claimant is free to offer chiropractic evidence to help the Secretary understand his inability to work, *id.* at § 404.1513(e)(3), there is no requirement that the Secretary accept or specifically refute such evidence.

■ The Secretary, however, may not so easily disregard the opinion of Dr. Orchard, a treating physician. Where an ALJ chooses to disregard the opinion of the treating physician, he must set forth clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (*Magallanes*). If "the treating physician's opinion is contradicted by that of another doctor and the ALJ wishes to disregard the opinion of the treating physician, the ALJ must set forth 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir.1989), *quoting Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (*Murray*).

■ In this case, as pointed out later, the opinion of Dr. Orchard is contradicted by the opinions of several other doctors. Therefore, the Secretary was required to articulate "specific, legitimate reasons" for disregarding Dr. Orchard's opinion. *Magallanes*, 881 F.2d at 751. The ALJ, however, made no specific reference to any opinion or evidence offered by Dr. Orchard. He merely observed that Dr. Linder, his medical advisor, reviewed the medical records submitted by Dr. Orchard after the administrative hearing and then he stated

in his findings that "[t]he opinion of the claimant's treating physician has been fully considered in making this decision." Neither of these statements suffices as the type of specific reason for rejecting the treating physician's opinion that is contemplated by our precedent.

■ However, the Appeals Council's decision also must be considered because it constitutes the final decision and word of the Secretary regarding Bunnell's claim. *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985) (concluding that our review is based on the *Secretary's* findings and not simply on the decision of the ALJ). Thus, we must determine whether the Appeals Council provided "specific, legitimate reasons" which are supported by substantial evidence in the record for rejecting Dr. Orchard's opinion that Bunnell was unemployable.

■ The Appeals Council first stated that "[w]hile Dr. Orchard has indicated that [Bunnell is] unable to work and [is] unemployable, his opinion is not uncontradicted since Drs. Poulson, Klein and Krauz all felt [she was] capable of some kind of work activity." This conclusion is supported by substantial evidence in the record. In his report of September 27, 1979, Dr. Poulson stated: "I find it difficult to understand her claim for severe disability, based on what I see clinically, of the left ankle." Although he also concluded that "she is disabled from doing very active work, such as a waitress," he opined that "she is capable of retraining." Dr. Klein indicated on August 18, 1981, that Bunnell was limited in walking, standing, stooping, kneeling, and lifting. However, he noted no limitations that contradict the Secretary's conclusion that Bunnell is capable of sedentary work. Likewise, Dr. Krauz, on August 25, 1981, opined that Bunnell's only limitations were "heavy/strenuous physical activity[,] prolonged walking; walking on uneven surfaces" and "walking up stairs." Again, this description of Bunnell's limitations contradicts Dr. Orchard's opinion that Bunnell was unemployable and supports

the ALJ's finding that Bunnell was capable of sedentary work.

Bunnell, however, argues that the evidence from these physicians does not effectively contradict Dr. Orchard because Dr. Orchard's opinion was rendered at a later date. This might be true if Dr. Orchard had made any clinical findings suggesting a deterioration in Bunnell's condition, see *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative."), but he did not. In fact, the lack of clinical findings identified by Dr. Orchard was the second reason the Appeals Council discounted his testimony. The Appeals Council stated, "[t]he clinical and laboratory findings furnished by Dr. Orchard ... do not support his opinion as to [Bunnell's] residual function capacity." Like the Appeals Council's first proffered reason for rejecting Dr. Orchard's testimony, this second reason is specific, legitimate, and supported by substantial evidence in the record. In the approximately two years time during which Bunnell visited his office, Dr. Orchard noted virtually no clinical findings aside from Bunnell's height, weight, temperature, and blood pressure.

Indeed, rather than do his own clinical and laboratory work, Dr. Orchard referred Bunnell to an orthopedic surgeon, Dr. Matsen, at the University of Washington hospital. After examining Bunnell, Dr. Matsen and Dr. Bergman, an orthopedic resident at the hospital, wrote Dr. Orchard, stating that Bunnell suffered from "a very slight positional scoliosis, which is corrected with straight forward bend test. She can come to a couple of inches of touching the floor with forward flexion." They also noted that "the left distal tib-fib at the ankle demonstrates some restriction of motion, but [also] dorsiflexion and plantar flexion which are mildly painful." The doctors then suggested a program including "weight loss and gentle aerobic exercises, consisting of three to four twenty minute sessions per week, elevating her heart rate to 120 beats per minute, with simple exercises such as walking, cycling, or swimming." Clearly, this exercise regimen is

inconsistent with Dr. Orchard's conclusions that Bunnell could not stand or sit, and that she was unemployable. Therefore, since Drs. Bergman and Matsen's evaluation, performed at Dr. Orchard's request and supplied to Dr. Orchard, was in effect Dr. Orchard's best clinical evidence regarding Bunnell's condition, and was the opinion of specialists to which we generally ascribe greater weight than we do to the opinion of a general practitioner, see *Lombardo v. Schweiker*, 749 F.2d 565, 566 (9th Cir.1984), it is not at all surprising that the Secretary concluded that "[t]he clinical and laboratory findings furnished by Dr. Orchard ... do not support his opinion as to [Bunnell's] residual functional capacity."

We therefore conclude that the Secretary did provide specific, legitimate reasons for the rejection of Dr. Orchard's opinion. Because Dr. Orchard's opinion was unsupported by clinical findings and contrary to the opinions of other examining physicians, there was substantial evidence in the record to support the reasons stated. Therefore, the Secretary did not err in discounting Dr. Orchard's opinion.

### B.

■ Bunnell's second contention turns on the validity of her assertions of disabling pain. At her hearing before the ALJ, Bunnell testified that she was unable to work because her pain prevented her from standing for more than five minutes at a time and from sitting in a stationary position for more than 15 to 20 minutes at a time. The ALJ found that Bunnell's complaints of pain were not credible and concluded that Bunnell was capable of a wide range of sedentary work. Bunnell argues that we should uphold the decision of the district court that the ALJ improperly disregarded her testimony of disabling pain because the ALJ failed to make the specific findings contemplated by our decision in *Varney v. Secretary of Health & Human Services*, 846 F.2d 581 (9th Cir.1988) (*Varney*).

In *Varney*, we held that "[w]hile the Secretary may decide to disbelieve or dis-

regard excess pain testimony, . . . such a decision must be supported by *specific findings.*" 846 F.2d at 584 (emphasis in original); *see also Murray,* 722 F.2d at 502; *Green,* 803 F.2d at 532. We also stated that although "[t]he parameters of this specific finding requirement are not entirely clear[,] . . . we have held explicitly that the specific finding requirement is *not* satisfied if the ALJ discredits excess pain testimony solely on the ground that it is not fully corroborated by objective medical evidence." *Varney,* 846 F.2d at 584 (emphasis in original); *see also Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1278–79 (9th Cir.1987); *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986); *Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir.1986). Although Bunnell is correct that the Secretary must make specific findings to reject her pain testimony, *Murray,* 722 F.2d at 502, her reliance on *Varney* and the cases which follow its reasoning is misplaced. As we recently explained in *Bates v. Sullivan,* 894 F.2d 1059, 1071–72 (9th Cir.1990) (Wright, J. and Wallace, J., concurring) (*Bates*), the *Varney–Gamer–Cotton* line of cases applies only to disability determinations rendered prior to January 1, 1987, because their formulation of the law concerning pain testimony is based on 42 U.S.C. § 423(d)(5)(A). Section 423(d)(5)(A), by virtue of its sunset provision, is "ineffective for cases in which the determination is rendered after January 1, 1987." *Id.* at 1071; *see also* Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 3(a)(3), 98 Stat. 1799–1800; *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1002–03 (6th Cir.1988) (describing sunset provision).

In this case, the Appeals Council's decision upholding the ALJ's decision and denying Bunnell benefits was rendered on September 28, 1987, almost nine months after the expiration of section 423(d)(5)(A). Therefore, the *Varney–Gamer– Cotton* line of cases interpreting section 423(d)(5)(A) does not apply.

"In the absence of [the] statutory standard, the Secretary's standard for accepting subjective pain testimony . . . is controlling." *Bates,* 894 F.2d at 1071. The Secre-

tary's regulation concerning pain testimony provides:

> If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness, or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. *We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.*

20 C.F.R. § 416.929 (1989) (emphasis added). Interpreting this regulatory language, the majority in *Bates* concluded that a claimant could "never be found disabled unless he could point to a medical condition which caused him to suffer from the *degree* of pain which he alleged." *Bates,* 894 F.2d at 1065 (emphasis added). Therefore, for all disability determinations rendered after January 1, 1987, the Secretary "may disregard a claimant's subjective pain testimony unless it is accompanied by evidence of 'a medical condition that could be reasonably be [sic] expected to produce' that pain." *Id.* at 1072, *quoting* 20 C.F.R. § 416.929 (1989). In other words, "the Secretary is free to disregard complaints of pain which are not supported by, or which are inconsistent with, medical findings." *Bates,* 894 F.2d at 1068. "The ALJ, of course, is required to make specific findings to that effect." *Id.* at 1072, *citing Murray,* 722 F.2d at 502.

█ In this case, the ALJ found that Bunnell's complaint of disabling pain was not credible because it was not supported by the medical evidence of record: clinical findings, x-rays, the opinion of treating examining physicians, and the impression of the medical advisor. As the ALJ discussed in his decision, the opinions of the physicians who treated Bunnell through 1984

belie Bunnell's testimony that she is unable to work because her pain prevents her from standing for more than five minutes at a time and from sitting in a stationary position for more than 15 to 20 minutes at a time. For example, as discussed above, in November of 1984, when Dr. Bergman and Dr. Matsen examined Bunnell at the request of Dr. Orchard, they advised weight loss, gentle aerobic exercises, walking, cycling, or swimming as ways to alleviate her back pain. Such a program is clearly incompatible with Bunnell's own assessment of her physical limitations.

In addition, in November of 1983, Bunnell was examined by Dr. Beals, an orthopedist at the Oregon Health Sciences University Hospital. Dr. Beals stated that Bunnell was "quite capable of a good deal of physical activity, by her own admission, but she is distressed by pain after use. I know nothing aside from symptomatic management that will deal with this." The fact that Dr. Beals noted Bunnell's complaints of pain does not suggest that the ALJ improperly relied on Dr. Beals's testimony. To the contrary, Dr. Beals's opinion that "symptomatic management" was the only possible remedy suggests that he did not think Bunnell needed to stop participating in physical activity.

The ALJ also discussed at length the conclusions of Dr. Linder, a Board certified orthopedic surgeon, who served as a non-treating, non-examining medical advisor at the ALJ's request. The ALJ pointed out that Dr. Linder, after reviewing all of the medical evidence, observing Bunnell and listening to her at the hearing, concluded that there was "no evidence to suggest [Bunnell] had a functional degree of limitation of physical disability that would, on an objective basis, prevent her reasonably continuous gainful employment."

In sum, there is substantial evidence in the record to support the ALJ's determination that the medical evidence, aside from the statements of Dr. Orchard which we have already concluded were properly disregarded, does not support Bunnell's complaints of *disabling* pain. We, therefore, conclude that the ALJ properly disregarded Bunnell's subjective pain testimony. *Bates*, 894 F.2d at 1068 ("[T]he Secretary is free to disregard complaints of pain which are not supported by, or which are inconsistent with, medical findings.").

### C.

■ Bunnell's final argument is that the ALJ improperly ignored the decision of the Washington Department of Social and Health Services that she was disabled. This argument is curious. Bunnell admits that the law is clear that the state agency's determination is not binding on the Secretary. *Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir.1985); *see also* 20 C.F.R. § 416.904 (1989) ("[A] determination made by another agency that you are disabled ... is not binding on us."). However, she argues that the Secretary must afford great weight to such decisions, just as great weight must be given the opinion of a claimant's treating physician. Apparently, she would have us incorporate a requirement similar to the one we have developed in the treating physician context, i.e., the Secretary must articulate specific and legitimate reasons for disregarding the state agency's determination. We see no reason to construct another hoop through which the Secretary must jump. The Secretary's regulation means what it says: the determination of a state agency "is not binding." *Id.* As we held in *Wilson*, "[t]he state finding may be introduced into evidence before the Secretary, but she may attribute as much or as little weight to it as she deems appropriate." 761 F.2d at 1385. We hold that the Secretary is not required to articulate specific reasons for disregarding the state agency determination.

REVERSED.

NELSON, Circuit Judge, dissenting:

I respectfully dissent.

The majority holds that the Secretary's conclusion that objective medical evidence does not support Bunnell's claims of disabling pain is sufficient to justify the denial of SSI benefits. They acknowledge that this formulation of the law conflicts with the "*Varney–Gamer–Cotton* line of cases" but

argue that these cases are inapplicable here since their reasoning is based on a now defunct statutory provision, 42 U.S.C. § 423(d)(5)(A). *See Bates v. Sullivan,* 894 F.2d 1059, 1071–72 (9th Cir.1990) (Wright, J., and Wallace, J., concurring). According to the majority, subjective pain testimony is now evaluated under 20 C.F.R. § 416.929 which allows the Secretary "to disregard complaints of pain which are not supported by, or which are inconsistent with, medical findings." *Id.* at 1068 (Wright, J., and Wallace, J., concurring).

I sharply disagree with the notion that *Varney–Cotton–Gamer* line is no longer good law. While the majority may be correct that 42 U.S.C. § 423(d)(5)(A) has expired due to sunset legislation, they err in suggesting that *Varney*'s pronouncement on the evaluation of pain testimony relied exclusively on that statute. A careful reading of that case indicates that it interpreted not only the enabling statute but its accompanying regulation, 20 C.F.R. § 404.1529 (1987). *See Varney,* 846 F.2d at 583. The wording of this regulation, which still exists today in unmodified form, is *identical* to that of 20 C.F.R. § 416.929, interpreted here by the majority. Moreover, the *Varney* court's understanding of this regulatory language was affirmed the following year by this court in *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989). Thus, the conclusion is inescapable that prior to both *Bates* and the instant case this circuit has interpreted, on more than one occasion, the language of 20 C.F.R. § 416.929 in a manner antithetical to that urged here. We cannot disregard the weight of this precedent.

Accordingly, under Ninth Circuit precedent the Secretary must make specific findings which do not rely wholly on objective medical evidence when he rejects appellee's complaints of disabling pain. *Hammock,* 879 F.2d at 502; *Gamer,* 815 F.2d at 1275; *Cotton,* 799 F.2d at 1407. Of the seven factors noted by the ALJ to support his finding of noncredibility, three refer to objective medical criteria and hence cannot form the basis of the credibility determination in and of themselves.[1] Appellee's "daily activities" constitute a fourth factor, but nowhere does the decision discuss the range of these activities to refute appellee's allegation of disabling pain.[2] On the contrary, the ALJ notes that due to an arthritic condition in her hand, Bunnell "us[es] only light utensils and limits her physical efforts in all her daily living activities."[3] *In re Bunnell,* No. 541–50–9512 (Oct. 16, 1986), at 3.

The ALJ also referred to "plaintiff's appearance of testimony at the hearing." While it is appropriate to consider a claimant's general appearance in assessing credibility, *see Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975), the reference is sufficiently cryptic to require further explanation if it is to be of use in justifying the ALJ's finding that Bunnell's testimony lacked credibility.

The remaining factors cited by the ALJ as influencing his decision are "the opinion of treating examining physicians" and "the impression of the medical advisor." *In re Bunnell* at 6. In this regard, the ALJ discussed both the opinions of various physicians who had treated Bunnell through 1984 and the objective medical evidence on which their opinions were based. He also

1. Those factors are (1) clinical findings, (2) x-rays, and (3) the long-standing nature of Bunnell's abnormalities.

2. While at her administrative hearing appellant testified that she has engaged in a number of daily activities—*e.g.* cooking, cleaning, clerical work, *attending classes*—*since the onset of her* disability in 1977, we have no way of knowing whether the ALJ relied on this testimony since it is not expressly referred to in his decision.

3. The summary treatment of appellee's daily activities distinguishes the instant case from

*Fair v. Bowen,* 885 F.2d 597, where the ALJ referred to specific activities which the claimant performed during the time in which he allegedly suffered from disabling pain. The court noted, to this end, that the claimant "testified that 'he remains capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile.'" *Fair,* 885 F.2d at 604 (quoting *In re Fair,* No. 541–24–0650 (Mar. 28, 1986), at 3).

discussed at length the conclusions reached by Dr. Scott Linder, the court medical advisor.[4] After reviewing Linder's observations with respect to the medical evidence, the ALJ noted that Linder concluded that nothing in the medical records "suggest[s] that (Bunnell) has a functional degree of limitation or physical disability or anything that would, *on an objective basis,* prevent her reasonably continuous gainful employment." *In re Bunnell* at 6 (emphasis added).

While supportive of the ALJ's discrediting of appellee's claims of excess pain, Linder's conclusions are insufficient in and of themselves to justify such a finding as they appear to be based on purely objective data. This is not to say that the ALJ may not accept and rely on the opinion of Linder and various treating physicians; such testimony cannot, however, be the *sole* basis of his rejection of appellee's claims if it is based solely on a consideration of objective medical data. *See, e.g., Hammock,* 879 F.2d at 502; *Gamer,* 815 F.2d at 1275.

Most significantly, the ALJ's decision fails to explain its rejection of the conclusions reached by Dr. Whelan J. Orchard, appellee's most recent treating physician. The majority concurs in this assessment, but holds that the Appeals Council cured any defect by adequately explaining why it discounted Orchard's opinion. I disagree.

The Secretary may disregard the opinion of a treating physician only if he sets forth "specific, legitimate reasons" for doing so. *Magallenes,* 881 F.2d at 751. "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir.1989); *Cotton,* 799 F.2d at 1408.

The Appeals Council noted that "[w]hile Dr. Orchard has indicated that [Bunnell is] unable to work and [is] unemployable, his opinion is not uncontradicted since Drs. Poulson, Klein, and Kranz all felt [Bunnell

was] capable of some kind of work activity." *In re Bunnell,* 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 (Sept. 28, 1987), at 6. This bald statement, without more, is plainly insufficient to reject the opinion of Dr. Orchard who treated Bunnell for a two-year period *after* she was seen by Poulson, Klein and Kranz. The Council provides no detail whatsoever as to the relevant facts and conflicting clinical evidence and engages in no "reasoned interpretation" at all. Thus, it is impossible to conclude that this statement constituted a *"specific,* legitimate reason" for rejecting Orchard's opinion.

The Council also stated that while Orchard claimed that Bunnell's "ability to stand and/or walk or sit off and on for a total of 6 hours in an 8-hour day is absent ... [t]he clinical and laboratory findings furnished by Dr. Orchard ... do not support his opinion as to [her] residual functional capacity." *Id.* at 5–6. As with the previous statement, this general, conclusory language is simply not enough to justify rejecting Orchard's opinion. The Council neither identified the clinical findings to which it was referring nor indicated why it believed that this evidence did not support the doctor's conclusions.

Accordingly, and in sum, I cannot conclude that the Secretary has furnished "clear and convincing" reasons, *see Rodriguez,* 876 F.2d at 762, for rejecting the opinion of treating physician Whelan J. Orchard.

Finally, the Secretary does not come to grips with *Varney's* exhortation to "isolate particular complaints of pain and discuss the evidence suggesting that these complaints are not credible." 846 F.2d at 584. Indeed, the Secretary does not attempt to argue that the decision is sufficient in this regard. Instead, he urges the court to fashion a "reasonableness" test which would not require him to detail the reasons for rejecting pain complaints where, as here, the reasons are "obvious

---

**4.** Linder's conclusions were based on his observation of Bunnell at the hearing and his review of the medical evidence including additional medical records submitted after the hearing by

John E. Hovencsek, D.P.M., Mark Van Hemert, D.C., and Whelan J. Orchard, M.D. *In re Bunnell* at 5.

and overwhelmingly supported in the record."

This post-hoc attempt to avoid the impact of *Varney* is misguided, as the rejection of Bunnell's claim does not find unequivocal support in the record. The opinion of treating physician Orchard, discussed above, is evidence enough of that. The Secretary's proposed modification of the standard for rejecting claims of disabling pain is, moreover, objectionable on public policy grounds. If implemented, it would erode claimants' due process rights by allowing the agency to determine when and if they are entitled to an explanation of the denial of claims based on disabling pain. Appellate courts would be forced, in addition, to "second-guess" the reasoning of the administrative law judges and to pour through the administrative record to ensure that there is support for the agency's summary dismissal of claims. I would hesitate to impose this burden on the courts.

### Conclusion

I would affirm the district court holding that the Secretary's decision rejecting Bunnell's complaints of disabling pain was insufficiently specific and detailed under applicable Ninth Circuit law. Because I believe that the *Varney–Gamer– Cotton* line of cases is still good law, I disagree with the majority that an individual's complaints of disabling pain may be discredited on the basis of objective medical evidence alone. We have repeatedly recognized that "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and the stamina of the individual victim." *Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir. 1986); *see also, e.g., Cotton,* 799 F.2d at 1407; *Varney,* 846 F.2d at 581. In light of the highly subjective nature of pain, we have required the Secretary, when rejecting claims of disabling pain, to make specific findings not based exclusively on objective considerations. By holding to the contrary, the majority has in effect redefined pain as a purely objective phenomenon and

rendered pain testimony, "in the final analysis, almost superfluous." *Cotton,* 799 F.2d at 1407. This trivialization of pain testimony not only flies in the face of a number of our decisions of the past several years, it will result in the unjust denial of benefits to many deserving, disabled Americans.